Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Andrea M. Gandara, Esq. (NV Bar No. 12580)
Email: agandara@nevadafirm.com
HOLLEY DRIGGS
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorneys for Alina Hua; Chin Lin Hua; and Christine Waage*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>CENTURIA FOODS, INC.,<br><br>Debtor. | Case No. 21-50046-btb<br>Chapter 11<br><br>**OBJECTION OF SECURED CREDITORS ALINA HUA, CHIN LIN HUA, AND CHRISTINE WAAGE TO CONFIRMATION OF PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**<br><br>Date of Hearing: May 11, 2021<br>Time of Hearing: 2:00 p.m.<br><br>Judge: Hon. Bruce T. Beesley |

Secured creditors Alina Hua ("A. Hua"), Chin Lin Hua ("C.L. Hua"), and Christine Waage ("Waage", collectively "Secured Creditors"), by and through counsel, Richard F. Holley, Esq. and Andrea M. Gandara, Esq. of the law firm Holley Driggs, hereby object to confirmation of the Centuria Foods, Inc.'s Plan of Reorganization for Small Business Under Chapter 11 [ECF No. 92] (the "Plan") filed by Debtor Centuria Foods, Inc. ("Centuria" or the "Debtor") on March 13, 2021.

Secured Creditors object to the Plan for the following grounds and the following reasons: (1) the Debtor's business involves handling marijuana materials that exceed legal federal THC limits to qualify as hemp and the Plan will be supported by income generated from this business. Therefore, plan confirmation must be denied pursuant to Section 1129(a)(3); (2) none of Debtor's prepetition financial history supports its ability to perform under the Plan. Instead, Debtor's own filings with this Court reflect year after year of losses. Because the Plan is not feasible, confirmation must be denied under Section 1129(a)(11); and (3) Secured Creditors allowed

secured claims totaled $1,353,837.25 and Secured Creditors elected to have their claims treated as fully secured under Section 1111(b). *See generally* Proofs of Claim 3, 4, and 5 and Notice of Election by Alina Hua, Chin Lin Hua, and Christine Waage Under 11 U.S.C. § 1111(b) to be Treated as Fully Secured for the Purposes of Chapter 11 Plan of Reorganization [ECF No. 121] (the "1111(b) Election"). However, the Plan impermissibly proposes insufficient payment of only $900,000.00 in violation of Section 1129(a)(7)(B) and 1191(b) and (c). Moreover, in order to satisfy the total balance due to Secured Creditors as of the petition date, the proposed monthly plan payments would have to increase from $15,000.00 to at least $22,563.95, which amount would further render the Plan not feasible under Section 1129(a)(11). Therefore, the Plan cannot be confirmed.

If the Court is not inclined to deny confirmation of the Plan on the parties' papers, Secured Creditors request an evidentiary hearing, and that the Court use the instant hearing date as a scheduling conference to set the evidentiary hearing date and establish discovery and related deadlines to be incorporated in a formal scheduling order.

This Objection is supported by the Declaration of Andrea M. Gandara, Esq. (the "Gandara Decl."), filed concurrently herewith pursuant to LR 9014(c)(2), the following Memorandum of Points and Authorities, the exhibits incorporated therein, the papers and pleadings on file herein, and any argument and evidence entertained by the Court on this matter.

Dated this 23rd day of April, 2021.

**HOLLEY DRIGGS**

/s/Andrea M. Gandara
Richard F. Holley, Esq. (NV Bar No. 3077)
Andrea M. Gandara, Esq. (NV Bar No. 12580)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Attorneys for Alina Hua, Chin Lin Hua, and Christine Waage*

- 2 -

14255-02/2584217.docx

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  STATEMENT OF RELEVANT FACTS

**Debtor's Loans from and Default on Obligations to Secured Creditors**

1. In December of 2018, Centuria entered into three short-term loan agreements with Secured Creditors for the aggregate sum of $325,000. *See* Proofs of Claim 3, 4, and 5.

2. After a series of loan extensions at Centuria's request, on October 2, 2019, Secured Creditors made demand for payment with a due date of October 16, 2019 for A. Hua and C.L. Hua's loans, and a due date of October 18, 2019 for Waage's loan. *See* Waage Decl. at [ECF No. 140] ¶¶33-34 .

3. On October 3, 2019, the Secured Creditors recorded UCC-1 Financing Statements with the Delaware Secretary of State and Nevada Secretary of State as to the Debtor's equipment and inventory. *See* Waage Decl. [ECF No. 140] at ¶ 36.

4. Centuria ultimately failed to repay the Secured Creditors' loans and the Secured Creditors proceeded with litigation and attempted repossession of their collateral. *See* Waage Decl. [ECF No. 91] at ¶ 11; and *see* [ECF No. 140] at ¶¶ 38-44.

**Debtor's Bankruptcy Proceeding**

5. On January 20, 2021, Debtor filed a Chapter 11 Subchapter V Voluntary Petition in [ECF No. 1] (the "Petition"). Attached to the Petition the Debtor included its 2019 U.S. Corporation Income Tax Return and Financial Statements reporting for the months of November and December 2020 and the year-to-date 2020.

6. The Debtor first filed Schedules and Statement of Financial Affairs on February 3, 2021 [ECF No. 44] ("Schedules"). The Debtor amended its Schedules on February 26, 2021 [ECF No. 66] (the "Amended Schedules").

7. The Debtor describes its business as THC remediation, distillation, and water-soluble processing of hemp crude oil and hemp distillate. The Debtor further reports that its customers provide the Debtor with "winterized, decarboxylated crude hemp extract for remediation and/or unremediated cannabidiol ('CBD') distillate derived from hemp that have been processed in compliance with all applicable state law and regulations." The Debtor contends it

- 3 -

14255-02/2584217.docx

returns product to its customers that has THC of .3% or below. *See* Omnibus Declaration of Slavik Nenaydokh in Support of Debtor's Initial Emergency Motions and Related Relief [ECF No. 24] ("Omnibus Slavik Declaration"), at ¶ 6.

8.  However, the Debtor has handled and returned materials to at least one customer who is located across state lines, HTC, Inc. which materials reportedly contained THC of 2.07%. *See* Certificate of Analysis dated February 17, 2021, a true and correct copy of which is attached to Gandara Decl., as **Exhibit 1.** The Debtor further reports on its own website that it handles materials with THC in excess of 0.3%. *See* Screenshot of centuriafoods.com/remediation/, a true and correct copy of which is attached to Gandara Decl., as **Exhibit 2**.

9.  On February 16, 2021, Debtor filed its First Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate Holds a Substantial or Controlling Interest Re: Nevada Laboratories & Analytics, Inc. [ECF No. 57] ("First Periodic Report"). In the First Periodic Report, the Debtor submitted financial records for "Centuria/NLA", "Centuria Foods Group" for the period "2021 (YTD to Jan 2021)."

10. On March 2, 2021, Debtor filed Debtor's Motion for Entry of an Order Approving the Sale of Equipment Remaining in its Arrowhead Facility Free and Clear of any and all Claims, Liens, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363, and for Waiver of the Stay of Effectiveness of the Order Pursuant to FED. R. BANKR. P. 6004(h) [ECF No. 68] ("Sale Motion").

11. On March 5, 2021, C. Waage filed a proof of claim in the amount of $601,695.75 ("C. Waage Claim"), *see* Claim #3-1; A. Hua filed a proof of claim in the amount of $330,945.75 ("A. Hua Claim), *see* Claim #4-1; and on March 8, 2021, C.L. Hua filed a proof of claim in the amount of $421,195.75 ("C.L. Hua Claim") *see* Claim #5-1 (collectively, "Secured Creditors Claims").

12. On March 11, 2021, Debtor filed an Omnibus Objection to Claim 3 of Christine Waage in the amount of $601,695.75; Objection to Claim 4 of Alina Hua in the amount of $330,945.75; Objection to Claim 5 of Chin Lin Hua in the amount of $421,195.75 [ECF No. 84] ("Omnibus Claim Objection"). The hearing regarding the Omnibus Claim Objection is scheduled for April 27, 2021 [ECF No. 86].

1  13. On March 13, 2021, Debtor filed a Chapter 11 Small Business Subchapter V Plan [ECF No. 92] (the "Plan") and a hearing is scheduled for May 11, 2021 [ECF No. 98].

2  14. On March 15, 2021, Debtor filed a Small Business Monthly Operating Report for Filing Period Ending 1/20/21 to 2/28/21 [ECF No. 96] ("Jan/Feb 2021 MOR").

3  15. On March 23, 2021, the Court entered an Order approving the Sale Motion. See Order Granting Approval of the Sale of Equipment Remaining in its Arrowhead Facility Free and Clear of Any and All Claims, Liens, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363, and for Waiver of the Stay of Effectiveness of the Order Pursuant to FED. R. BANKR. P. 6004(h) [ECF No. 103] ("Order Approving Sale").

4  16. On April 5, 2021, Secured Creditors issued a subpoena for the Debtor's records, which requires production of documents on or before April 23, 2021, at 5:00 p.m. *See* Ex Parte Motion for 2004 Examination of Debtor Centuria Foods, Inc. [ECF No. 122] ("2004 Exam"), Order [ECF No. 129] and Notice of Issuance of Subpoena to Debtor [ECF No. 136]. Also on April 5, the Secured Creditors made their 1111(b) Election [ECF No. 136].

5  17. On April 15, 2021, Secured Creditors filed a Response to Debtor's Omnibus Objection to Proofs of Claim of: (I) Christine Waage, Claim No. 3; (II) Alina Hua, Claim No. 4; and (III) Chin Lin Hua, Claim No. 5 [ECF No. 139] ("Response").

**Debtor's Adversary Proceeding Against Secured Creditors**

18. On March 15, 2021, Debtor filed an Adversary Complaint [Adv. No. 1] against Secured Creditors, American Nutritional Products, Inc., and the U.S. Small Business Administration to determine the validity, extent, and priority of liens in the Debtor's assets.

19. On April 15, 2021, Secured Creditors filed an Answer to Complaint, Counterclaim, and Crossclaim [Adv. No. 8].

20. The Court issued an Order for a scheduling conference on July 20, 2021 [Adv. No. 4].

///
///
///

14255-02/2584217.docx

## II. LEGAL ARGUMENT

### A. Legal Standards for Plan Confirmation.

The Court has an affirmative duty to ensure that a proposed plan satisfies all of the requirements for confirmation set forth in Section 1129. *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997). Section 1129 references thirteen requirements which must be met before a proposed plan of reorganization may be confirmed. *Id.* In the context of a subchapter V case, Section 1191(a) deviates from Section 1129 requirements by excusing compliance with subsection (15), which applies to individual debtors and therefore is not pertinent to the analysis of the Plan. Section 1191(b) also deviates from Section 1129 in that it allows for confirmation in contravention of subsections (b)(8) and (10) of Section 1129 which otherwise would require acceptance by at least one impaired class of claims. More specifically, Section 1191(b) provides for cramdown over rejection by every impaired class of the Plan if:

(i) the rejecting secured claimants retain their liens, are paid at least the amount of their secured claims through the plan, have liens against sale proceeds from their collateral and/or receive the indubitable equivalent of their secured claims;

(ii) the plan provides for payments equivalent to the debtor's projected disposable income for a period of three or five years; and,

(iii) the debtor will be able to or is reasonably likely to make plan payments and there are appropriate remedies to protect the rejecting claimants from plan payment default such as liquidation of nonexempt assets.[1]

11 U.S.C. § 1191(c).

The plan proponent has the burden of proof by a preponderance of the evidence, *Ambanc*, 115 F.3d at 653.

In this case, the Debtor's Plan fails to meet the requirements of Section 1129(a)(3) ("plan has been proposed in good faith and not by any means forbidden by law"),  Section 1129(a)(7) and Section 1191(c)(1) and (3) ("fair and equitable" treatment through retention of liens or receipt value of not less than secured creditor's allowed secured claim and debtor's ability to make all

---

[1] The proposed plan provides that, after a 15-day cure period, creditors can move for dismissal/conversion and have automatic relief from plan injunction to pursue all rights and remedies without further court order.

payments), and Section 1129(a)(11) ("not likely to be followed by the liquidation, or the need for further financial reorganization"). Therefore, confirmation must be denied.

**B.      The Debtor's Operations Deal in Products Not Authorized Under Federal Law.**

"Marijuana, . . . remains a Schedule I controlled substance under the [CSA]. The CSA prohibits, among other things, the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled substance." *Burton v. Maney (In re Burton)*, 610 B.R. 633, 627 (B.A.P. 9th Cir. 2020) (citations omitted). "It is clear that the Marijuana Business of [the debtor] is not authorized under the Controlled Substances Act." *In re CWNevada*, 602 B.R. at 746. Further, bankruptcy courts in this District have dismissed bankruptcy cases in which debtors either receive or propose to receive income from a source authorized to distribute or cultivate marijuana. *See In re CWNevada*, 602 B.R. 717, 727 n.24 (Bankr. D. Nev. 2019) (collecting cases).

Here, the Debtor's business operations deal in products that are prohibited under federal law. The Debtor has admitted as much on its own website. *See* Screenshot of centuriafoods.com/remediation/, Ex. 2 to Gandara Decl. Moreover, there is post-petition evidence that the Debtor returned an inhalable concentrate with THC of 2.07%. to customer HTC, Inc., which materials are well over the legal limit to constitute hemp. *See* Certificate of Analysis dated February 17, 2021, Ex. 1 to Gandara Decl. Further, upon information and belief, the Debtor has returned product to customers other than HTC, Inc. in amounts with THC levels that exceed 0.3%, continues to handle materials with THC levels that exceed 0.3% since its bankruptcy filing.

Because the Debtor's business operations deal in products that are prohibited under federal law, the Plan violates Section 1129(a)(3) and therefore confirmation must be denied.

**C.      The Debtor's Plan Is Unconfirmable Because It Does Not Treat Secured Creditors' Claims Fairly and Equitably.**

A plan cannot be confirmed over the objection of an impaired secured class unless the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b). As incorporated by Section 1191(c)(1), fair and equitable treatment requires:

> (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property . . .

11 U.S.C. § 1129(b)(2)(A)(i)(I) and (II).

In this case, the Debtors' Plan unfairly and inequitably treats the Secured Creditors' secured claims because it does not recognize the full amount due pursuant to the 1111(b) election. The Debtor estimates payments to Secured Creditors at only $900,000 but as of the petition date Secured Creditors were owed no less than $1,353,837.25. *See* Plan [ECF No. 92, p.18 of 18] ($900,000 in proposed payments to Secured Creditors) and Proofs of Claim 3, 4, and 5. Moreover, interest, late fees, and attorney fees and costs continue to accrue.

In addition, subchapter v's unique requirements for "fair and equitable" treatment reiterates that the debtor has to be able to make all payments under the plan or there must at least be a reasonable likelihood that the debtor will be able to make all plan payments. In light of the amount of Secured Creditors' claims, the Debtor would need to make monthly payments of at least $22,563.95. But the Debtor's financial projections show that the Debtor would fall short with its operating profit to make the minimum payment to Secured Creditors in 56 of 60 months.[2]

In summary, the Debtor's Plan is unfair and inequitable because it fails to provide the necessary payments equal the present value of the Secured Creditors' Claims and cannot be confirmed over the Secured Creditors' objection by cramdown.

**D.    The Debtor's Plan is Not Feasible**

Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). "The purpose of section 1129(a)(11) is to prevent confirmation of visionary

---

[2] As discussed in more detail below, the Plan is not feasible under Section 1129(a)(11).

14255-02/2584217.docx

schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11] at 1129-34 (15th ed. 1984)). If a plan is predicated on speculative, conjectural, or unrealistic financial projections, as opposed to concrete evidence of financial progress sufficient to sustain operation and plan payments, confirmation must be denied. *See In re Hobble-Diamond Cattle Co.*, 89 B.R. 856, 858 (Bankr. D. Mont. 1988) ("Speculative, conjectural, or unrealistic predictions cannot be used to predict financial progress.") (citations omitted); *In re Trans Max Techs., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006) ("section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." (citations and quotations omitted).

Courts may consider various factors in evaluating whether the proposed plan is feasible including:

- The adequacy of the debtor's capital structure;
- The earning power of the debtor's business;
- Economic conditions;
- The ability of debtor's management
- The probability of the continuation of the same management
- Other matters which may determine the prospects of sufficiently successful operations to enable plan performance

*In re Trans Max Techs., Inc.*, 349 B.R. 80, 92 (2006) (*citing In re Greate Bay Hotel and Casino, Inc.*, 251 B.R. 213, 226-27 (Bankr. D.N.J. 2000) and 7 COLLIER ON BANKRUPTCY, § 1129.03[11] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)).

Here, it is highly unlikely that the Debtor's financial projections are achievable considering the limited records regarding the Debtor's historical financial performance and its short time in this Chapter 11 case. For example, while the Debtor's financial projections attached to its Plan as Exhibit 2 show the Debtor's business generating over $1.2 million in net income over the next five years, these projections are simply illusory, based on both historical and

- 9 -

14255-02/2584217.docx

current financials. Specifically, the Debtor's historical net operating income figures were negative in 2019 and 2020. See Amended Schedule A/B [ECF No. 66, p. 8 of 36, Item 72) (reporting 2019 net operating loss of $1,798,402); Financial Statements [ECF No. l, p. 9 of 29] (reporting 2020 YTD net income of -$850,584); *see also* 2019 U.S. Corporation Income Tax Return [ECF No. 1, p. 13 of 29, Line 28). Importantly, the Debtor's distressed financials in 2019 and 2020 were after the Debtor had already received hundreds of thousands of dollars in loans from Secured Creditors for immediate capital needs purportedly for a surge of demand for CBD.

With respect to the Debtor's post-petition financial records, its Jan/Feb 2021 MOR touts cash receipts of $278,775 compared to $167,410 in cash disbursements leaving net cash flow of $111,365. *See generally* Jan/Feb 2021 MOR [ECF No. 96, p. 3, Item Nos. 32-34]. However, there is no context for the cash receipts such as identification of whether the deposits and payments are for sales that occurred during the January to February 2021 or if the amounts are for pre-petitions A/R. This is significant because the Debtor's current financial condition may be skewed by the Debtor's untimely collection of past due payments for old customer orders. An important piece of information regarding current operations and feasibility concerns sales since the filing of Bankruptcy. No such information is provided by the Debtor. Compounding uncertainty of the reported cash receipts is the inconsistency between the Debtor's Jan/Feb MOR and its First Periodic Report that states 2021 YTD operating profit was -$38,179. *See* First Periodic Report [ECF No. 57, p. 15 of 30]. Considering that the Debtor's Financial Statements regarding December 2020 show negative net income of -$80,667 and November 2020 show $46,546, clearly the alleged positive cash receipts in Debtor's Jan/February MOR are an anomaly. *See* Financial Statements [ECF No. 1, p. 9 of 29].

In addition, the Debtor's one-month net cash flow does not account for any debt service to the Secured Creditors or any other secured creditors. In short, the Debtor's post-petition financials are not reliable and therefore do not support feasibility. It should also be noted that as of this writing, the Debtor has not filed its MOR for the period ending March 31, 2021. As a result, creditors and the Court do not have the benefit of this additional financial information of operating performance with which to assess the feasibility of the Debtor's plan. Secured

- 10 -
14255-02/2584217.docx

Creditors reserve the right to supplement this objection upon receipt of the MOR for the period ending March 2021.

### III. CONCLUSION

Based on the foregoing, Secured Creditors respectfully request that the Court enter an order denying confirmation of the Debtor's Plan and granting such other relief as the Court deems appropriate. If the Court is not inclined to deny confirmation of the Plan on the parties' papers, Secured Creditors request an evidentiary hearing, and that the Court use the instant hearing date as a scheduling conference to set the evidentiary hearing date and establish discovery and related deadlines to be incorporated in a formal scheduling order.

Dated this 23rd day of April, 2021.

**HOLLEY DRIGGS**

/s/Andrea M. Gandara
Richard F. Holley, Esq. (NV Bar No. 3077)
Andrea M. Gandara, Esq. (NV Bar No. 12580)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Attorneys for Alina Hua, Chin Lin Hua, and Christine Waage*

14255-02/2584217.docx

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs, and that on the 23rd day of April, 2021, I caused to be served a true and correct copy SECURED CREDITORS' OBJECTION TO CONFIRMATION OF PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11 [ECF NO. 92] in the following manner:

☒ (ELECTRONIC SERVICE Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL)  By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER)  By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE)  That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

/s/Madeline VanHeuvelen
An employee of Holley Driggs

14255-02/2584217.docx