Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Andrea M. Gandara, Esq. (NV Bar No. 12580)
Email: agandara@nevadafirm.com
HOLLEY DRIGGS
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912
*Attorneys for Alina Hua, Chin Lin Hua, and Christine Waage*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>CENTURIA FOODS, INC.,<br><br>Debtor. | Case No. 21-50046-BTB<br>Chapter 11<br><br>**MOTION TO DISMISS BANKRUPTCY CASE**<br><br>Date of Hearing: June 10, 2021<br>Time of Hearing: 10:00 a.m.<br><br>**REMOTE:**<br>**Court Hearing Participation Number (888) 684-8852 Code 2981680#**<br><br>Judge: Hon. Bruce T. Beesley |

Secured creditors Alina Hua ("A. Hua"), Chin Lin Hua ("C.L. Hua"), and Christine Waage ("Waage"; collectively with A. Hua and C.L. Hua, "Secured Creditors"), by and through counsel, Richard F. Holley, Esq. and Andrea M. Gandara, Esq. of the law firm Holley Driggs, hereby move to dismiss this case for cause pursuant to 11 U.S.C. §1112(b). The grounds for dismissal are that the business operations of Debtor Centuria Foods, Inc. ("Debtor") include the handling of materials which are prohibited under federal law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14255-02/2582464.docx

This Motion is supported by the papers and pleadings on file in this bankruptcy case, judicial notice of which is respectfully requested pursuant to Fed. R. Evid. 201(b) and (c) and 1101(a) and (b); the Memorandum of Points and Authorities herein; the Declaration of Trace Adams, principal of HTC Inc. ("Adams Decl.") and the Declaration of Andrea M. Gandara, Esq. ("Gandara Decl.") filed concurrently herewith pursuant to LR 9014(c); and any evidence and oral argument the Court entertains at the hearing on this Motion.

Dated this 12th day of May, 2021.

**HOLLEY DRIGGS**

/s/Andrea M. Gandara
Richard F. Holley, Esq. (NV Bar No. 3077)
Andrea M. Gandara, Esq. (NV Bar No. 12580)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

*Attorneys for Alina Hua; Chin Lin Hua; and Christine Waage*

14255-02/2582464.docx

### MEMORANDUM OF POINTS AND AUTHORITIES

#### I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157, and LR 1001(b)(1). Adjudication of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Pursuant to LR 7008, Secured Creditors consent to the entry of final orders or judgment by the bankruptcy judge on this Motion if it is determined that the bankruptcy Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

#### II. INTRODUCTION

The Debtor's business model is predicated upon operations which involve the receipt, handling, and processing of marijuana (albeit for purposes of its "remediation" into hemp), which remains illegal under federal law. Section 1112(b) of the Bankruptcy Code provides that a debtor's bankruptcy case shall be dismissed or converted to a case under chapter 7, or the Court shall appoint a chapter 11 trustee or examiner, for cause, unless Debtor can demonstrate, on the record, an exception to the statutory mandate of 11 U.S.C. § 1112(b)—which, as set forth herein, Debtor in this Case is not able to do. Secured Creditors respectfully request that the Court dismiss Debtor's bankruptcy case pursuant to 11 U.S.C. § 1112. The primary reason for dismissing this bankruptcy case is simple: Debtor does not qualify as a debtor under the Bankruptcy Code because its business model includes the handling and processing of marijuana and, on at least one occasion, has resulted in the Debtor putting marijuana into interstate commerce. Such business is in violation of the Controlled Substance Act ("CSA"), and the Debtor has failed to demonstrate that its business predicated upon the receipt, handling, and processing of marijuana is *not* federally prohibited. A bankruptcy case must be dismissed if the continuation of the case would require the court, trustee, or debtor in possession to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA.

#### III. STATEMENT OF RELEVANT FACTS

1. In December of 2018, the Debtor entered into three short-term loan agreements with Secured Creditors for the aggregate sum of $325,000. *See* Proofs of Claim Nos. 3, 4, and 5.

2.      After a series of loan extensions at Debtor's request, on October 2, 2019, Secured Creditors made demand for payment with a due date of October 16, 2019, for A. Hua and C.L. Hua's loans, and a due date of October 18, 2019, for Waage's loan. *See* Declaration of Christine Waage in Support of Response to Debtor's Omnibus Objection to Proofs of Claim of: (I) Christine Waage, Claim No. 3; (II) Alina Hua, Claim No. 4; and (III) Chin Lin Hua, Claim No. 5 [ECF No. 140][1] ("Waage Decl.") at ¶¶ 33-34.

3.      Ultimately, to avoid paying Secured Creditors the Debtor filed for chapter 11 bankruptcy relief on January 20, 2021 [ECF No. 1] (the "Petition"). *See* Omnibus Declaration of Slavik Nenaydokh [ECF No. 24] ("First Day Nenaydokh Decl.") at p. 6 of 20, ¶ 21 ("to avoid . . . harm . . . if [Secured Creditors] were permitted to seize and remove [their] collateral, . . ."). Thus, Debtor has admitted this case was filed to gain the upper hand in a two-party dispute arising from Debtor's nonpayment to Secured Creditors of monies which were loaned.

4.      The Debtor has also objected to proofs of claim of several major constituencies in this bankruptcy including Secured Creditors' claims. *See, e.g.*, ECF Nos. 84 (claim objection against Secured Creditors[2]) and 126 (claim objection against American Nutritional Products, Inc. ("ANPI"); Ms. Maria Watson ("Watson"); and W&S Investments, LLC ("WS")).

5.      The Debtor describes its business as THC remediation, distillation, and water-soluble processing of hemp crude oil and hemp distillate. The Debtor further reports that its customers provide the Debtor with "winterized, decarboxylated crude hemp extract for remediation and/or unremediated cannabidiol ('CBD') distillate derived from hemp that have been processed in compliance with all applicable state law and regulations." The Debtor contends it returns product to its customers that has THC of .3% or below. *See* First Day Nenaydokh Decl., at p. 2 of 20, ¶ 6.

---

[1] All references to "ECF No." are to the numbers assigned to the documents filed in the bankruptcy case identified in the caption above ("Bankruptcy Case") as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada.

[2] Which objection was overruled by the Court at hearing on May 6, 2021. *See* Gandara Decl., at ¶ 5.

- 4 -

14255-02/2582464.docx

6. However, the Debtor has handled and returned materials to at least one customer who is located across state lines, HTC, Inc. which materials reportedly contained THC of 2.07%. *See* Adams Decl., at ¶¶ 2, 6-10; *see also* Certificate of Analysis dated February 17, 2021 ("COA"), a true and correct copy of which is attached to Adams Decl., as **Exhibit 1.**

7. The Debtor further reports on its own website that it handles materials with THC in excess of 0.3%. *See* Screenshot of centuriafoods.com/remediation/ ("Website"), a true and correct copy of which is attached to Gandara Decl. as **Exhibit A**; *see also* Print of Debtor's website http://centuriafoods.com/ as of May 4, 2021, a true and correct copy of which is attached to Gandara Decl. as **Exhibit B**.

8. After being presented with this evidence, the Debtor attempted to explain its business activities as legal and in compliance with federal law. *See* Correspondence by Matthew C. Zirzow, Esq. to Office of the United States Trustee Dated March 30, 2020 [sic] ("Debtor's Letter to United States Trustee"), attached at Exhibit 1 to Debtor's Omnibus Reply to Objections, and Brief in Support of Confirmation of Subchapter V Chapter 11 Plan of Reorganization Dated March 13, 2021 ("Reply Brief") [ECF No. 164, pp. 41-53 of 53].

9. The Debtor's Chapter 11 Plan of Reorganization dated March 13, 2021 (the "Plan") [ECF Nos. 92 and 111] was confirmed on May 11, 2021, over three objections filed by Secured Creditors [ECF No. 153], ANPI and Watson [ECF No. 156], and WS [ECF No. 158].

### IV.    ANALYSIS

Respecting dismissal of a chapter 11 bankruptcy case, 11 U.S.C. § 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

The Court has broad discretion to determine what constitutes "cause" for dismissal under Section 1112(b)(1) of the Bankruptcy Code. *See Sanders v. U.S. Trustee (In re Sanders)*, 2013 WL 1490971, *6 (B.A.P. 9th Cir. Apr. 11, 2013).

- 5 -

14255-02/2582464.docx

"Several Courts have held that a bankruptcy case must be dismissed if the continuation of the case would require the court, trustee, or debtor in possession to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA." *Burton v. Maney (In re Burton)*, 610 B.R. 633, 638 (B.A.P. 9th Cir. 2020) (collecting cases).[3]

### A. Cause for Dismissal Exists Because the Debtor Receives, Handles, and Processes Marijuana.

As noted by the Debtor, the CSA defines marijuana as, *inter alia*, not including hemp. *See* Reply Brief [ECF No. 164 at p. 43 of 53]. Also as noted by the Debtor, "The current definition of THC expressly exempts any materials or compound that falls within the definition of hemp." *See id.* at p. 45 of 53. Furthermore, as described by the Debtor "the 2018 Farm Bill defines 'hemp' as . . . with a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." *See id.* at p. 49 of 53. Despite extensive discussion of hemp, and the legality of hemp's varying derivatives, the Debtor does not identify how receiving, processing, and handling of **marijuana** to remediate its THC levels down to the THC levels of hemp, and returning that product into interstate commerce, does not run afoul of federal law.

Section 1112(b)(4)(B) of the Bankruptcy Code[4] provides:

> (4) For purposes of this subsection, the term "cause" includes— . . .
> (B) gross mismanagement of the estate[.]

Here, cause exists to dismiss this case because the Debtor's business model is premised upon marijuana, which is illegal under the CSA. Maintaining an operation that receives, handles, and processes cannabis in violation of the CSA is considered to be "gross mismanagement" within the terms of the statute.

One of the Debtor's primary tenets appears to be that the Debtor does not run afoul of federal law because it handles hemp. As set forth in Debtor's letter to the United States Trustee, hemp (including "cannabinoids containing not more than 0.3% delta-9 THC") is excluded from

---

[3] *Burton* has been reviewed and discussed or distinguished by Courts outside the Ninth Circuit, for example *In re Malul*, 614 B.R. 699 (Bankr. D. Colo. 2020).

[4] 11 U.S.C. §§ 101 – 1532.

- 6 -

14255-02/2582464.docx

the federal definition of marijuana. *See* Debtor's Letter to United States Trustee [ECF No. 164, at p. 46 of 53, Sec. (d)(i)]. ***However***, in order to remediate marijuana and essentially transform it into "hemp"[5] (*i.e.*, bring its delta-9 THC levels ***down to a level where they no longer trigger DEA enforcement as a Schedule I substance under the Controlled Substances Act***), it naturally follows that the Debtor must first handle and then process marijuana to perform this remediation. Next, once the Debtor's "remediation" process is complete, allegedly the Debtor puts "hemp" into the stream of commerce. This brings the analysis to a second, critical point. ***There is proof that on at least one occasion the Debtor, post-petition, put <u>marijuana</u> and not hemp into the stream of commerce***. *See* COA, Ex. 1 to Adams Decl. The Debtor has not only failed to account for this occurrence but has failed to satisfactorily explain or demonstrate how such occurrences ***will not continue*** after the Debtor's plan is confirmed. This failure to take such a transgression of federal law seriously calls into question the Debtor's ability to effectuate a confirmed plan.

For these and other reasons, Secured Creditors respectfully proffer that cause exists warranting the dismissal of the Bankruptcy Case.

### 1. Debtor's Marijuana Remediation Business Is Not Authorized Under Federal Law.

"Marijuana, . . . remains a Schedule I controlled substance under the [CSA]. The CSA prohibits, among other things, the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled substance." *Burton v. Maney (In re Burton)*, 610 B.R. 633, 627 (B.A.P. 9th Cir. 2020) (citations omitted). "It is clear that the Marijuana Business of [the debtor] is not authorized under the Controlled Substances Act." *In re CWNevada*, 602 B.R. 717, 746 (Bankr. D. Nev. 2019). Further, Bankruptcy Courts in this District have dismissed bankruptcy cases in which debtors either receive or propose to receive income from a source authorized to distribute or cultivate marijuana. *See In re CWNevada*, 602 B.R. 717, 727 n.24 (Bankr. D. Nev. 2019) (collecting cases).

---

[5] The Debtor's website indicates it handles and remediates THC. *See* Website, Ex. B to Gandara Decl.

Here, a major crux of Debtor's business model and planned business operations remediating marijuana products *into hemp* so that they can be put back into the stream of commerce is prohibited under federal law because it involves and necessitates the handling and processing of marijuana. Dismissal of this bankruptcy Case is therefore appropriate.

      **a.**    **Debtor Cannot Lawfully Effectuate a Confirmed Plan of Reorganization Because Its Business Model Is Not Solely Predicated Upon Hemp But Rather Includes the Handling and Processing of Marijuana, Which the Debtor Allegedly "Remediates" Into Hemp.**

Much of the Debtor's gloss on its business operations focuses on permissible and lawful uses of hemp. What the Debtor *does not touch on* is how its handling and use of marijuana—the starting component to the "remediation" processes—is legal under federal law. That is conspicuously absent. And, likely, for good reason. That the Debtor's business model partly includes and takes advantage of lawful developments concerning cultivation, processing, and sales of hemp does not change that this does not comprise 100% of the Debtor's business. Rather, a component of the Debtor's business is remediation, which is where (allegedly) the Debtor takes in marijuana and remediates it by removing the THC, so that it can enter the stream of commerce as hemp. Secured Creditors say allegedly because on at least one occasion post-petition, the Debtor released product that qualifies as marijuana under federal law, into the stream of commerce. *See* COA, Ex. 1 to Adams Decl. The Debtor has, despite being made aware of this test result since at least March of 2021,[6] failed to provide a satisfactory explanation for how the Debtor is releasing marijuana into interstate commerce. Such a release of a Schedule I controlled substance is in violation of federal law. Because the Debtor has failed to satisfactorily explain how such an event occurred, investigate the frequency of its release of marijuana products into interstate commerce, or otherwise provide assurances that the Debtor is no longer conducting unlawful activity under auspice of the Bankruptcy Court while a Chapter 11 debtor in possession, the Debtor has had opportunity to—and has failed to—identify that it will be able to effectuate a confirmed plan of

---

[6] *See* Debtor's Letter to United States Trustee [ECF No. 164, at p. 42 of 53] (Debtor's counsel correspondence referencing Secured Creditors' communications with United States Trustee on March 23, 2021, and noting Debtor's counsel's receipt of "an analysis report . . .").

- 8 -

14255-02/2582464.docx

reorganization that does not likewise run afoul (even if intermittently) of federal law. Debtor has had approximately six weeks to provide such assurances but instead has cast shadows upon Secured Creditors' concerns, sought to disallow their proofs of claim, and attempted to ram through the reorganization process without taking such concerns very seriously.

### b. Case Dismissal Accords With Prevailing Case Law in This Circuit

Here the Debtor is similar to the debtor in *In re CWNevada*, 602 B.R. 717 (Bankr. D. Nev. 2019), a recently filed bankruptcy case involving a marijuana business. In *CWNevada*, one of the debtor's creditors sought to dismiss the chapter 11 case pursuant to 11 U.S.C. § 305(a) or, in the alternative, 11 U.S.C. § 1112(b) primarily on the grounds that the debtor was engaged in the marijuana business, a federally prohibited activity. The Court ultimately held that dismissal under 11 U.S.C. § 305(a) was warranted[7] because, *inter alia*, the debtor's marijuana business was not authorized under the Controlled Substances Act.[8] *CWNevada*, 602 B.R. at 745-46.

In *Burton v. Maney (In re Burton)*, 610 B.R. 633, 627 (B.A.P. 9th Cir. 2020), the Bankruptcy Appellate Panel ("BAP") affirmed dismissal of a chapter 13 bankruptcy where the debtors owned an interest in an entity that was not currently operational, but had commenced litigation to recover on breach of contracts related to the growth and sale of marijuana. Even though *Burton* was a chapter 13 case, the debtors' relationship to a shuttered marijuana business is apposite to the determination of whether this Debtor's bankruptcy should be dismissed because, in *Burton*, it was the debtors' "connection with the marijuana business" under the circumstances[9] that amounted to cause for dismissal. *See Burton*, 610 B.R. at 639 n.10.[10] In its dismissal analysis, the Court also noted:

---

[7] Whether dismissal would have been warranted under Section 1112(b) was not addressed. *See, e.g.*, 602 B.R. at 747.

[8] There was also no evidence that the debtor's CBD business did not run afoul of the Controlled Substances Act. *See, e.g.*, *CWNevada*, 602 B.R. at 743.

[9] In addition, there was evidence (not, apparently, considered by the Bankruptcy Court), that the debtors held a 50% membership interest in another entity engaged in the medical marijuana business. *See Burton*, 610 B.R. at 636 n.7.

[10] The *Burton* debtors had stated they did not "currently derive income from any entity involved in the marijuana industry[,]" *Burton*, 610 B.R. at 634-35, were not currently involved in the cannabis industry, and "were 'willing to get out of the [entity's] business entirely[,]'" *Burton*, 610

- 9 -
14255-02/2582464.docx

> Given the nature[] of [the entity's] business, which was clearly involvement in the marijuana industry, neither a case trustee, nor these Debtors, can sell or liquidate the [ownership interest] in the [entity], which is property of this estate through the bankruptcy case. This would necessitate the Court and the Trustee's involvement in condoning the illegal activity.

*Burton*, 610 B.R. at 636-37. Thus, despite the *Burton* debtors declaring under oath that the formerly operational marijuana entity had gone out of business in advance of the Petition Date, had generated no income since, was unlikely to recover money through its litigation,[11] and would not be relied upon to fund a plan, the Court found that "[a]ny recovery from the litigation would be derived from conduct that is illegal under federal law[.]" *Burton*, 610 B.R. at 635, 636. Therefore, any distributions to the debtors "would also be derived from illegal conduct." *Burton*, 610 B.R. at 637.

Other Ninth Circuit law supports the conclusion that the Debtor's business runs afoul of federal law, thus warranting dismissal of the bankruptcy case. In *Garvin v. Cook Investments NW, SPNWY, LLC (In re Cook Investments NW)*, 922 F.3d 1031 (9th Cir. 2019),[12] the Ninth Circuit addressed the "good faith" requirement attendant to plan confirmation pursuant to 11 U.S.C. § 1129(a)(3), when faced with confirmation premised in part on rental income from a marijuana business.[13] In *Garvin*, the United States Trustee had previously sought dismissal of the bankruptcy under Section 1112(b) for the debtors' gross mismanagement, but this was denied without

---

B.R. at 636. However, the entity sought to recover funds "attributable to contracts under which it was to serve as a cultivator, grower, holder, and/or seller of marijuana." *Burton*, 610 B.R. at 636.

[11] Apparently, a contingency fee arrangement and a litigation financing lien were at play. *Burton*, 610 B.R. at 635. Although, it seems the Court did not find the Debtors sufficiently proved that the litigation claims were worthless. *Burton*, 610 B.R. at 639, n.11; *see also id.* at 640 (noting the debtors' failure to support assertions with proof that the litigation "would not result in their receipt of any litigation proceeds.").

[12] Discussed in *In re CWNevada*, 602 B.R. 717 (Bankr. D. Nev. 2019). *Garvin* has been distinguished or discussed by other Courts. *See* n.14, *infra*.

[13] *Garvin* involved five related real estate entities, one of which leased property to an unrelated third party licensed under the State of Washington to grow marijuana. The Ninth Circuit, affirming plan confirmation, noted that an 11 U.S.C. § 1129(a)(3) challenge to the good faith of a debtor in proposing its plan goes to whether the plan *is proposed in* good faith, not the good faith of the terms that are themselves proposed. *See Garvin*, 922 F.3d at 1034-35.

- 10 -

14255-02/2582464.docx

prejudice based (in part) on the Debtors' representation that the lease violating the CSA would be rejected (and, it later was). *See, e.g., Garvin*, 922 F.3d at 1033.[14]

Here, although the Centuria Debtor's business model includes business operations that involve hemp and non-marijuana components, there is a remediation component of Debtor's business model which appears, based on the Debtor's own filings, inextricably intertwined with the Debtor's overall operations and which involves the receipt, handling, and processing of marijuana for purposes of remediation into a plant byproduct that has sufficiently low THC levels as to not trigger concerns under the CSA. Problematically, in order for the Debtor to remediate marijuana into this final product, the Debtor must receive, handle, and process marijuana. Second, Secured Creditors are in possession of one test result which indicates, post-petition, that on (at least this) one occasion the Debtor released remediated "product" that **had THC levels high enough to still be marijuana**.

## V. CONCLUSION

On at least one occasion Debtor's "remediation" efforts produced a product with sufficient THC concentrations to qualify as marijuana, ***not hemp***, post-petition. *See* COA, Ex. 1 to Adams Decl. Despite being aware of this report for close to six weeks, the Debtor has not proffered evidence to demonstrate that such circumstances have not occurred since and would not occur again in effectuating Debtor's Plan of reorganization.

/ / /

/ / /

/ / /

/ / /

---

[14] Courts in other Circuits have distinguished *Garvin* or taken issue with its analysis under Section 1129(a)(3). *See, e.g., In re Way to Grow, Inc.*, 610 B.R. 338, 346-47 (D. Colo. 2019) (attesting that *Garvin* distinguished *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799 (Bankr. D. Colo. 2012) on a mistaken presumption about *Rent-Rite*'s analytical premise); *see also In re Basrah Custom Design, Inc.*, 600 B.R. 368, 381 n.38 (Bankr. E.D. Mich. 2019) (disagreeing with *Garvin*'s § 1129(a)(3) analysis and noting it would not be unreasonable to question whether the Ninth Circuit should have refused to decide the § 1112(b) issue raised by the United States Trustee on appeal). And, *CWNevada* distinguished *Garvin*, in part, because *Garvin* "did not preclude consideration of a motion to dismiss . . ." *In re CWNevada*, 602 B.R. at 730.

- 11 -

For the foregoing reasons, Secured Creditors respectfully request the Court grant the Motion and dismiss the Bankruptcy Case of Debtor Centuria Foods, Inc.

Dated this 12th day of May, 2021.

**HOLLEY DRIGGS**

/s/Andrea M. Gandara
Richard F. Holley, Esq. (NV Bar No. 3077)
Andrea M. Gandara, Esq. (NV Bar No. 12580)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

*Attorneys for Alina Hua; Chin Lin Hua; and Christine Waage*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs, and that on the 12th day of May, 2021, I caused to be served a true and correct copy of MOTION TO DISMISS BANKRUPTCY CASE in the following manner:

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

   /s/Madeline VanHeuvelen
An employee of Holley Driggs

14255-02/2582464.docx